## CITY OF BEAUMONT v. SILAS.
### No. 4411.

Court of Civil Appeals of Texas. Beaumont.
Jan. 30, 1947.

Rehearing Denied April 2, 1947.

George E. Murphy, City Atty., and Harriett A. Rasor, Asst. City Atty., both of Beaumont, for appellant.

John L. Bell, W. O. Bowers, Jr., and Jack Brookshire, all of Beaumont, for appellee.

MURRAY, Justice.

This is an appeal by the City of Beaumont from a judgment of the district court of Jefferson county in favor of Manchild Silas for damages for personal injuries received by him while working as an employee of said City's street and bridge department.

On July 1, 1941, appellee Manchild Silas was at work as a laborer in the street and bridge department of appellant City of Beaumont. The gang with which he was working was engaged in laying a new stretch of sewer line on Park street, connecting certain premises there with a main sewer line which served jointly as a storm sewer and sanitary sewer. In the course of this task, it became necessary to dig a ditch, tearing up in connection therewith a small portion of a concrete sidewalk and driveway. Concrete was used to replace the broken sidewalk and driveway, and in part also to back fill the sewer line. Appellee was sent with other workmen on a truck to the city's warehouse to procure some sacks of cement. While he was in the act of picking up a sack of cement to load it on the truck, other sacks of cement fell upon him from the stacked sacks in the warehouse and caused him serious bodily injuries, including the fracture of one of the lumbar segments of his spine.

The appellant city provided him with medical and hospital care and also with an operation upon his injured back. It also continued to carry him on its payroll from the time of his injury until he filed suit against the city almost two years later. After his physical condition improved, he worked with his old gang occasionally but never with any great degree of regularity. During this time the City continued to pay him each two weeks about the same wages he had received when he was able to do full time work, without regard to the amount or character of work he actually performed during that time. The city engineer, under whose direction the employees of the street and bridge department worked, advised him shortly after he was hurt that he would not need a lawyer and that the city would take care of him as long as he was hurt.

The appellee in his first amended original petition alleged that the sacks of cement in the city's warehouse were improperly stacked, that is, that the sacks of cement each weighing about 100 pounds were stacked one upon the other (instead of being cross-stacked) to a height of 15 sacks and alleged negligence on the part of the city in failing to inspect the stacking of such cement, in failing to have any one supervise and direct the removal of such cement, in failing to warn the appellee of the dangers of the place in which he was working, in failing to require that the cement be stacked in a safe and secure manner, in failing to have some competent person examine the stacks of cement to determine whether they were safe, in not requiring that the cement sacks be first removed from the upper tiers of each stack, and in requiring the appellee to work in such place which was unsafe. The appellee in his supplemental petition also pleaded, and later introduced in evidence, Section 70, Paragraph 2 of the charter of the City of Beaumont by which the city is empowered to "provide rules and regulations for maintaining employees when disabled while performing their duties."

The city defended first by a plea in abatement, based upon Section 70, Subsection 31 of the charter of the City of Beaumont, which reads as follows:

"Written notice of personal injuries or property damage. Before the City of Beaumont shall be liable for damages of any kind, the person injured or whose property is damaged, or someone in his behalf, shall file with the Commission a notice in writing of such injury within sixty days after the same has been received, stating specifically in such notice when, where, and how the injury occurred and the extent thereof, and the names and addresses of any person or persons, if any, witnessing the same, if such names and addresses can be ascertained by reasonable diligence."

It further alleged and it was admitted, that the appellee had never given any notice in writing to the City Commission of his injuries relied upon in his suit and had given no notice of the matters as required by such Section 70, Subsection 31 of the charter of the City. The City further answered with numerous special exceptions, and general denial and special denials relating to its alleged negligence in regard to the stacking of the cement sacks. It also pleaded in bar Section 70, Subsection 31, above quoted; contributory negligence, unavoidable accident, and assumption of risk. It further pleaded in the alternative that the injuries received by the appellee, if any, were of temporary nature and that he had entirely recovered therefrom. It further pleaded in the alternative that the cement sacks in question were stacked by the WPA, an agency of the federal government, and it was not responsible for any injuries caused by the manner in which the cement was stacked. It further pleaded in the alternative that on the date appellee received his injuries he was employed by the city in constructing and maintaining its public sewerage system, and was thereby engaged in governmental activities of such city and that it was therefore not liable for any injuries received by him. The pleading of the appellant contained other matters of defense and by way of cross action against the appellee for money paid to him after his injuries, which matters were not brought up on appeal and for that reason are not set out here in detail.

Upon a trial to a jury it was determined by the verdict of the jury, in answer to special issues submitted, that a stack of cement sacks in the city's warehouse fell, striking the appellee and injuring him; that in unstacking the cement appellee was working in a dangerous and unsafe place; that the city failed to have some competent person examine the cement stacks to determine whether they were safe, that such failure was negligence and a proximate cause of appellee's injuries; that the appellee was so inexperienced in unstacking cement that he did not realize he was working in a dangerous and unsafe place; that the cement on which he was working was not stacked in the usual normal manner; that the city failed to warn appellee that such place was dangerous and unsafe, that such failure was negligence and a proximate cause of his injuries; that the city failed to use ordinary care to require

the cement to be stacked in a safe manner, that such failure was negligence and a proximate cause of his injuries; that the city failed to have any one supervise the removal of the sacks of cement from the warehouse, that such failure was negligence and a proximate cause of appellee's injuries; that the city did not require that prior to the removal of the cement sacks close to the floor sacks be first removed from the upper portion of each stack, that such failure was negligence and a proximate cause of appellee's injuries; that within 60 days from the date of the injuries the city commission of Beaumont knew that appellee had sustained injuries and that in paying him salary checks within 60 days from such date of his injuries said city commission intended to compensate appellee for such injuries; that in paying salary checks to appellee within 60 days after the date of his injuries the city commission intended to effect a waiver of the charter provision providing for filing a notice in writing within 60 days from the date of the injury; that because of the payment of such salary checks to him within such 60 days, appellee was thereby induced to believe he would be fully compensated for his injuries and that but for such belief he would have filed the required notice and that under the same or similar circumstances a person of ordinary prudence would have so concluded; that in assuming and paying ambulance charges and medical and hospital expenses of the appellee from July 1, 1941, to September 1, 1941, the city commission of Beaumont intended to compensate appellee to some extent for his injuries and intended to effect a waiver of its charter provision providing for the filing of a written notice of injuries within 60 days; that appellant's city engineer, within 60 days after his injury, advised appellee that the city would fully compensate him for all wages lost during his disability and that in doing so the city engineer did not exceed his express or implied authority and that the appellee believed such statements, and that a person of ordinary prudence in the same or similar circumstances would have concluded that the city would fully compensate him; that but for such belief appellee would have filed written notice with the city commission within 60 days from the date of his injury; that the city engineer advised appellee within 60 days after his injuries that it would be unnecessary for him to procure a lawyer and that in so doing he did not exceed his authority from the city commission of appellant; that appellee believed such statement and that a person of ordinary prudence, under the same or similar circumstances, would have concluded that the city would fully compensate him for all wages lost during his period of disability; that but for such belief appellee would have filed the required notice in writing with the city commission; that but for such belief appellee would have filed the required notice in writing with the city commission; that during the 60 day period following the appellee's injuries the city maintained the practice of paying to a workman employed by it and injured in his employment his salary during the period of disability without requiring that such injured employee file notice in writing with the city commission within 60 days after the date of the injury; that payments by the city to the appellee were made under such practice and custom; that payment by the city of and injured employee's wages were made under such practice or custom without regard to the character of work the employee was engaged in when injured; that the payment by the city of the injured employee's wages were made to him under such practice and custom with the intention of the city commission to compensate the injured employee to some extent for his injuries; that payment by the city to the appellee of his salary checks between July 1, 1941, and September 1, 1941, was made under the practice or custom of paying an injured employee without regard to the character of work he was engaged in when injured and that by doing so the city commission of appellant intended to effect a waiver of the charter provision providing for the filing of a notice in writing with the city commission within 60 days from the date of the injury; that payment by the city to the appellee of his salary checks between the date of September 1, 1941, and June 15, 1943, was made under the practice and custom of paying

an injured employee without regard to the character of work he was engaged in when injured. The jury also found in its verdict that $8,000 would compensate him for his injuries, taking into consideration the sum of money the city had paid him after his injury. The jury further found by its verdict that the appellee, on the occasion in question, did not fall against the stack of cement, that he did not voluntarily approach the stacks of cement to remove sacks therefrom with the knowledge that such stacks would probably fall and inflict injury upon him; that he had not recovered from his injuries on May 24, 1943; that he did not fail after he was injured to exercise ordinary care for his own recovery, that on July 1, 1941, appellee did not have the disease of syphilis and that he did have it on August 21, 1942, that he would not have recovered from his injuries but for such disease, that the appellee did not make false representations to the city that he was disabled because of his injuries. The jury further found that the injuries to the appellee were not the result of an unavoidable accident. On the verdict of the jury and the admissions of fact, judgment was entered by the court for the appellee against the appellant for $8,000. After its motion for a new trial was overruled, the city has perfected its appeal to this court for review.

At the conclusion of the testimony, the appellant presented its motion for peremptory instruction, which was by the court overruled.

After the verdict was received, the appellant also filed its motion for judgment non obstante veredicto, which was also by the court overruled.

The appellee has devoted the first 38 pages of his brief to objections to the consideration of the appellant's assignments of error Nos. 2, 3, 50, 51, 53, 54, 58, 63, 69, 70, 71, 72, 73 and 74 and to the appellant's points Nos. 4, 5, 6, 7, 8, 9, 10, 11 and 21. Some of the objections brought forward show some merit but we do not consider them so serious as to require a rebriefing of the case by the appellant.

The first 20 points of the appellant's 21 points are presented in the appellant's brief in three separate groups.

The first group center about the appellant's contention that the appellee was engaged at the time of his injuries in the construction of a sanitary sewer line which was a governmental activity of the City of Beaumont and that such city is not liable for any injury to an employee injured while so engaged. The second group present together the appellant's contentions that under the pleadings and evidence the appellee was guilty of contributory negligence as a matter of law, that he had assumed the risks of the danger of his employment as shown by the pleadings and the evidence as a matter of law, that the court erred in submitting various special issues relating to the questions of negligence of the city. The third group present the appellant's contention in regard to the failure of the appellee to give notice in writing to the city commission within 60 days after his injuries, as required by its city charter, as a bar to recovery by him against the city. The 21st point attacks the verdict of the jury as excessive.

 In consideration of the appellant's first group of points, in which it maintains nonliability because of the appellee's being employed upon work being done by the city in its governmental capacity, we do not find it necessary to thread our way through the maze of authorities which attempt to trace the somewhat hazy and indistinct line between the two fields of municipal activities, in one of which the municipal corporation is held to be liable and in the other not liable. The determination of liability vel non here turns upon whether the appellant in carrying on the particular operation in the course of which appellee was injured, was exclusively engaged in carrying on a governmental function. The appellant's street and bridge department crew of laborers was engaged in connecting the premises on Park street with its combination storm and sewer line at that point. In connection with this job, it was also engaged in restoring the concrete portion of a sidewalk and driveway which had been torn up in digging a ditch for the sewer line. Work in regard to repair and maintenance of the sidewalk cannot be classified as work done in the city's governmental capacity. Under the authority of the case

of City of Port Arthur v. Wallace, 141 Tex. 201, 171 S.W.2d 480, 484, and cases therein cited, we believe that the activity of the appellant's crew of workmen therefore was not shown to have been exclusively governmental in its scope and the city cannot escape liability for an injury to its employee here. Under the pleadings and the evidence and the verdict of the jury, the appellant was convicted of negligence in regard to the condition of the cement sacks in its warehouse, which cement was for use indiscriminately in the repair of streets and sidewalks and in the construction and maintenance of sewers. It was going to use the cement partly for restoring the driveway and sidewalk. All of the facts combine to negative the appellant's contention that it was engaged exclusively in a governmental activity at the time in question. The appellant's first group of points are overruled.

The appellant's next group of points should not have been briefed together because they present some questions which are not closely related to each other. We dispose of them together, however, since they are thus presented. In this group the appellant first says that under the pleadings and undisputed evidence the appellee was guilty of contributory negligence as a matter of law, and that he had assumed the risks of the danger incident to his employment. It also attacks the manner of the submission of the questions of negligence in the court's charge, arguing that the entire theory of negligence as submitted by the court in its charge was erroneous. It says that the evidence was undisputed that the cement which caused the appellee's injuries was stacked by the WPA, a federal agency over which it had no control, and that it was error for the court to render judgment based upon the jury's finding that the city had failed to use ordinary care to require the cement to be stacked in a safe manner. It further argues that the trial court erred in submitting some of the issues on negligence because it assumed therein that it was the legal duty of the city to have some competent person examine the cement stacks to determine whether they were safe and that the court also erroneously assumed that it was the legal duty of the city to warn appellee that such place was dangerous; also that the court erroneously assumed that it was the duty of the city to have some one supervise and direct the manner of removing the sacks of cement from its warehouse. Questions of contributory negligence of the appellee and assumption of risk by him presented questions of fact for the jury which were properly submitted by the court in its charge, and such issues were determined by the jury in favor of the appellee. If the sacks of cement in this case had been improperly and negligently stacked, thereby rendering the warehouse an unsafe place in which appellee was to work, then the rule requiring the master to provide a reasonably safe place in which its servants were to work would make the appellant liable, even though the WPA, or some other agency or person, had actually done the stacking, if the elements of negligence and proximate cause were present. The duty to provide a reasonably safe place is unassignable and nondelegable by the master. Memphis Cotton Oil Co. v. Gardner, Tex.Civ.App., 171 S.W. 1082, and cases cited. In this case the city was found to be negligent in failing to have proper inspection of the cement stacks, in failing to warn the appellee that the place was dangerous, in failing to require the cement to be stacked in a safe manner, and in failing to have proper supervision of the work appellee was immediately engaged in doing. We fail to see how the fact that the WPA had originally stacked the sacks of cement would relieve the city from its duty of providing a safe place for its workmen in the warehouse. If it was necessary to do so to make the warehouse safe, the city could have restacked the sacks of cement and could have had them stacked in the customarily safe manner. These issues were properly submitted by the court in its issues in regard to negligence and proximate cause. The appellant's extensive argument under these points is based upon the proposition that the master is not responsible to its servant for any temporary or transitory condition which served to bring about an unsafe place for work. This is a well accepted doctrine, when applied to certain situations

of fact. It is well established in the testimony here that the warehouse was an unsafe place in which to work, because of the manner in which the sacks of cement had been stacked and this condition had existed for an appreciable length of time before the injury. We believe the theory and cases relied on by appellant are without application to the facts before us in this case, in the light of the holding in Memphis Cotton Oil Co. v. Gardner, supra. See also City of Denton v. White, Tex. Civ.App., 179 S.W.2d 834, 835.

■ Appellant's third group of points are based upon the failure of the appellee to file notice in writing with the city commission of Beaumont within 60 days after his injury, as required by Section 70, Subdivision 31, of the City's charter. The facts are without dispute that the city provided appellee with medical and hospital care and a surgical operation, and continued to pay him his regular wages after his injury. This payment of wages continued until this suit was filed, almost two years after the injury. It was the custom and policy of the city, and it was so authorized by its charter, to care for its employees who were injured in the course of their employment. We believe that the contention of the city has been decided adversely to it in the cases of Cawthorn v. City of Houston, Tex.Com.App., 231 S.W. 701; City of Waco v. Thralls, Tex. Civ.App., 128 S.W.2d 462; Id., Tex.Civ. App., 172 S.W.2d 142. Under these authorities it was a question of fact for the jury to determine in this case whether the mayor and city commission of the City of Beaumont by its conduct in regard to appellee evidenced an intention to waive strict compliance with the charter provision requiring filing of the written notice of injury within 60 days, and the jury having found in this case that the city commission of Beaumont by its action and conduct in regard to the appellee, his care and maintenance, did so intend, then compliance with such charter provision was not necessary as a condition precedent to maintaining this suit. The appellant's points in this regard are overruled.

■■ Appellant's 21st point is: "The error of the court in overruling defendant's motion for judgment non obstante veredicto upon the ground that the verdict of the jury was excessive and the jury in arriving at the amount of the verdict was influenced by passion, prejudice and other improper motives to the prejudice of the defendant." Appellant's brief in presenting this point presents excerpts from the testimony tending to show that the appellee had recovered from his injuries, had worked for various white people taking care of their lawns since his injury, that since his injury the appellee got drunk and had fights, and quotes from the testimony of medical experts tending to show that appellee's condition since the operation on his back is good. It refers to no part of the record indicating that there was any misconduct on the part of any of the jurors or counsel, or anything else which might have pointed to improper motives on the part of the jury in reaching its verdict. All of the matters set forth in the brief under this point fail to show any basis for the statement that the court erred in overruling appellant's motion for judgment non obstante veredicto. Even if the verdict had been excessive, that could not be ground for judgment non obstante veredicto. The evidence is sufficient to support the award of $8,000 for the injuries to appellee in this case, considering the fact that he was suffering with a fractured lumbar segment of his spine, that he suffered considerable pain and discomfort, that he was given a surgical operation in which a piece of bone was cut from his leg and grafted onto his spine, which grafting operation served to immobilize certain parts of his spine.

The judgment of the trial court is affirmed.