**Affirmed and Memorandum Opinion filed September 3, 2020.**



**In The**

# Fourteenth Court of Appeals

---

### NO. 14-18-00969-CV

---

### NASSER CHEHAB, Appellant

### V.

### FIRST SERVICE CREDIT UNION, Appellee

---

**On Appeal from the 157th District Court
Harris County, Texas
Trial Court Cause No. 2017-80462**

---

### MEMORANDUM OPINION

Appellant Nasser Chehab challenges the summary judgment in favor of First Service Credit Union on Chehab's breach of contract, breach of fiduciary duty, and Deceptive Trade Practices Act (DTPA) claims. Chehab asserts he raised genuine issues of material fact on his damages, which precludes summary judgment. Because we determine that Chehab failed to raise a genuine fact issue regarding damages, we affirm.

## BACKGROUND

Chehab opened a checking account with First Service Credit Union ("First Service"), which was governed by a Deposit Account Contract. On September 28, 2017, Chehab received a wire transfer into his account at First Service of $122,242.67. Before that transfer Chehab's balance was $8.96. On Friday, September 29, 2017, Chehab visited the Northwest Branch of First Service and asked to withdraw almost all of his balance in cash. A teller informed Chehab that First Service could not process such a large cash transaction without advance notice. Chehab then requested $80,000 in cash in $100 bills. Again, Chehab was told that First Service could not process such a large cash request without prior notice. The branch manager explained that Chehab's cash would be available the following Wednesday, October 4, 2017. The manager offered to fulfill Chehab's withdrawal request by wire transfer or cashier's check, but Chehab refused to accept anything but $100 bills. Chehab eventually agreed to accept $20,000 in cash, which he received in $100 bills. Before Chehab left, the branch manager explained that he could return on October 4, 2017, and pick up the remaining cash.

The following Monday, October 2, 2017, Chehab visited the Downtown Branch of First Service and requested $60,000 in $100 bills. The branch manager of the Downtown Branch explained, just as the Northwest Branch manager had, that Chehab would have to place an order for such a large amount of cash and offered to provide a wire transfer or cashier's check in the amount Chehab requested. Chehab refused the alternative methods and insisted on cash in $100 bills. The branch manager placed an order for $60,000 in $100 bills and informed Chehab that it would be available on Wednesday, October 4, 2017. Chehab became verbally abusive and was escorted from the branch by an off-duty police officer working for the branch.

The next day, October 3, 2017, Chehab returned to the Downtown Branch and

2

demanded $50,000 or $60,000 in $100 bills. He was given $8,000 in cash and told, again, to return on October 4, 2017 for the remainder. On October 4, 2017, Chehab returned to the Downtown Branch where he withdrew $54,000 in $100 bills. The record does not reflect how Chehab used the funds he obtained from First Service.

Chehab filed suit alleging breach of contract because the deposit contract required First Service to make Chehab's funds available immediately. First Service answered and filed a motion for traditional summary judgment in which it alleged that Chehab's allegations did not demonstrate that First Service breached a term of the contract and Chehab's claims for lost profits damages were not recoverable as a matter of law. As to damages, First Service asserted that Chehab's only damages related to a missed opportunity to establish a used car business. First Service's summary judgment was supported by affidavits from the branch managers at the Northwest Branch and the Downtown Branch. First Service also attached the Deposit Account Contract to its motion and Chehab's responses to interrogatories and requests for production. In First Service's interrogatories, it asked Chehab the amount and any method of calculating economic damages. Chehab responded:

> Due to defendant's breach of contract, Plaintiff missed an opportunity to establish a used car dealership business. It was projected to sell about 100 cars per week with a profit of $3000.00 per car for the first two months and about 10 cars per week with a [profit] of $1500.00 per car for the rest of the first year. Estimated damages: $3,120,000,00.

First Service moved for summary judgment on the grounds that Chehab's allegations did not demonstrate that First Service breached the contract and Chehab presented no evidence of lost profits from the inability to establish the used car dealership business.

After First Service filed its motion for summary judgment Chehab amended his petition to include claims for breach of fiduciary duty and violation of the DTPA.

Chehab also added claims for exemplary damages. On the same day Chehab responded to First Service's motion for summary judgment asserting that he established lost profits with reasonable certainty by focusing on "the experience of the persons involved in the enterprise and the nature of the business activity, and relevant market." Chehab attached no evidence to his response.

First Service replied to Chehab's response noting that Chehab's amended petition did not change the fact that Chehab failed to produce evidence of damages. Chehab amended his response to the motion for summary judgment attaching the affidavit of Toma Saman. Saman averred that he had been in the used car business for over 25 years. According to Saman's affidavit, immediately following Hurricane Katrina in New Orleans, Saman's used car business surged to approximately 100 used car sales per week for several months following the disaster. Chehab hoped to profit in a similar manner in Houston following Hurricane Harvey. Saman was to supply 35 to 40 cars to Chehab in exchange for $100,000 cash. Saman averred that he was unable to provide the cars because "Chehab did not hold his end of the deal." Saman's affidavit did not explain why he could not have accepted a wire transfer or cashier's check for the cars, or why he could not accept cash on October 4, three business days after Chehab initially demanded cash from First Service.

The trial court granted First Service's summary judgment motion "with respect to plaintiff's claims for lost profits" and denied the remainder of the motion.

First Service subsequently amended its answer asserting a counterclaim for sanctions pursuant to chapter 10 of the Texas Civil Practice and Remedies Code and Texas Rule of Civil Procedure 13. First Service also filed traditional and no-evidence motions for summary judgment challenging Chehab's third-amended petition in which he added breach of fiduciary duty and DTPA claims. In First Service's traditional motion, it asserted that Chehab (1) could not demonstrate recoverable

4

damages on his breach of contract claim; (2) could not establish that a fiduciary duty existed between him and First Service; (3) could not establish a violation of the DTPA; and (4) could not establish recoverable damages under the DTPA. In First Service's no-evidence motion it asserted:

- Plaintiff has no evidence that First Service knowingly or intentionally committed a violation of the DTPA by not immediately providing him cash on demand, precluding his claim for mental anguish under the DTPA.

- Plaintiff has no evidence that First Service misrepresented any fact to him that he relied upon in entering the Contract with First Service.

- Plaintiff has no evidence that First Service failed to disclose any information that First Service believed would be material to his decision to enter the Contract.

- Plaintiff has no evidence of any economic damages other than his claims for lost profits for the alleged used car business.

- Plaintiff has no evidence of any special relationship of trust and confidence necessary to create a fiduciary duty.

- Plaintiff has no evidence that First Service retained any economic benefits from the retention of his cash for three business days.

Chehab responded, asserting that all of his claims stemmed from "Defendant's failure to provide Plaintiff with the amount of his withdrawal request of $80,000 on the date desired[.]" As damages Chehab asserted lost income and profits that would have been derived if he could have invested in a used car dealership. Chehab further asserted that Texas recognizes nominal damages for breach of contract, and used car lots located in Houston are inherently profitable. Chehab attached to his response (1) two articles from Wired.com and The Detroit News about the number of cars lost during Hurricane Harvey and its after-effects; (2) Saman's affidavit; and (3) the affidavit of Luis Esparza, another used car dealership owner, in which Esparza

5

averred that his dealerships did not flood after Hurricane Harvey and he was able to sustain substantial sales.

On October 12, 2018, the trial court granted First Service's motion for summary judgment and dismissed all of Chehab's claims. First Service nonsuited all its claims under chapter 10 of the Texas Civil Practice and Remedies Code and Rule 13 of the Rules of Civil Procedure, and the trial court signed a November 22, 2018 order acknowledging the nonsuit, rendering a final judgment. *See Park Place Hosp. v. Estate of Milo*, 909 S.W.2d 508, 510 (Tex. 1995). Chehab timely appealed the trial court's final summary judgment.

## ANALYSIS

In two issues Chehab challenges the trial court's ruling on First Service's motion for summary judgment.

## I. Standard of review and applicable law

We review a no-evidence summary judgment under a legal sufficiency standard. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 750–51 (Tex. 2003) ("A no-evidence summary judgment is essentially a pretrial directed verdict, and we apply the same legal sufficiency standard in reviewing a no-evidence summary judgment as we apply in reviewing a directed verdict."). A no-evidence summary judgment will be sustained when: "(a) there is a complete absence of evidence of a vital fact; (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (c) the evidence offered to prove a vital fact is no more than a mere scintilla; or (d) the evidence establishes conclusively the opposite of a vital fact." *Id.* at 751 (citing *Merrell Dow Pharms. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997)).

We review a trial court's order granting a motion for a traditional summary

6

judgment de novo. *Mid-Century Ins. Co. v. Ademaj*, 243 S.W.3d 618, 621 (Tex. 2007). In reviewing a grant of a summary-judgment motion, we consider all of the evidence in the light most favorable to the nonmovant. *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 756 (Tex. 2007). To prevail on a traditional motion for summary judgment, a movant must prove entitlement to judgment as a matter of law on the issues pleaded and set out in the motion for summary judgment. Tex. R. Civ. P. 166a(c); *Masterson v. Diocese of Nw. Texas*, 422 S.W.3d 594, 607 (Tex. 2013).

If the trial court renders summary judgment without specifying the grounds, we affirm the judgment if any of the grounds presented are meritorious. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001) (per curiam). We first review the trial court's no-evidence summary judgment under the standards of Rule 166a(i). *See Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004). The nonmovant, here Chehab, must produce summary judgment evidence raising a genuine issue of material fact to defeat the summary judgment under that provision. Tex. R. Civ. P. 166a(i). If Chehab failed to produce more than a scintilla of evidence under that burden, then there is no need to analyze whether the Bank's proof satisfied the Rule 166a(c) burden. *See Ford Motor*, 135 S.W.3d at 600; *Walker v. Holmes, Diggs, Eames & Sadler*, No. 14-19-00234-CV, 2020 WL 2120295, at *3 (Tex. App.— Houston [14th Dist.] May 5, 2020, no pet.) (mem. op.).

## II. The trial court's orders on summary judgment merged into a final judgment for review by this court.

The trial court signed a partial summary judgment on August 14, 2018. Because Chehab amended his petition after First Service filed its first motion for summary judgment, the August 14 order was not a final order. *See Espeche v. Ritzell*, 123 S.W.3d 657, 663 (Tex. App.—Houston [14th Dist.] 2003, pet. denied) (citing *Chessher v. Sw. Bell Tel. Co.*, 658 S.W.2d 563, 564 (Tex. 1983)) ("A party may not

7

be granted judgment as a matter of law on a cause of action not addressed in a summary judgment proceeding."). The October 12, 2018 order granting the motion for summary judgment was made final by the trial court's order on First Service's nonsuit of its claim for sanctions under Chapter 10 of the Texas Civil Practice and Remedies Code and Rule 13 of the Texas Rules of Civil Procedure. We therefore address Chehab's challenge to the trial court's August 14, 2018 and October 12, 2018 summary judgment orders.

### III. Chehab produced no evidence of damages in response to First Service's no-evidence motion for summary judgment.

Chehab asserted causes of action for breach of contract, breach of fiduciary duty, and violations of the DTPA. In the no-evidence portion of First Service's motion for summary judgment, it asserted, inter alia, that Chehab had produced no evidence that First Service's action in not fulfilling Chehab's withdrawal request immediately in $100 bills caused him damages. Damages is a required element of each of Chehab's claims. *See Cruz v. Andrews Restoration, Inc.*, 364 S.W.3d 817, 824 (Tex. 2012) (no claim under the DTPA can be maintained absent proof that defendant's act was a producing cause of plaintiff's damages); *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 304 (Tex. 2006) (for breach of contract, a plaintiff may recover economic damages and attorney's fees, but not mental anguish or exemplary damages); *Tex. Instruments, Inc. v. Teletron Energy Management, Inc.*, 877 S.W.2d 276, 279 (Tex. 1994) (lost profits are recoverable for a breach of fiduciary duty when it is shown that the loss is the natural and probable consequence of the complained of act).

Chehab responded to First Service's motion by attaching two articles about the number of cars lost during Hurricane Harvey and its after-effects, and two affidavits of used car dealership owners in which they averred that used car

8

dealerships were likely to be profitable following a major hurricane. On appeal Chehab argues that nominal damages are recoverable in breach of contract claims, and that he raised a fact issue on lost profits.

### A. Nominal Damages

Chehab first argues that Texas law recognizes nominal damages for breach of contract, presumably alleviating a requirement that Chehab produce evidence of damages. Chehab, however, did not plead for nominal damages. In Chehab's live pleading, he alleged that First Service's breach of contract caused him damages "in the form of lost opportunity, lost income and profits from a used car business startup[.]" By pleading for monetary damages, Chehab is not entitled to recover nominal damages.

Nominal damages are available for breach of contract. *MBM Fin. Corp. v. Woodlands Operating Co.*, L.P., 292 S.W.3d 660, 664 (Tex. 2009). However, nominal damages are not for compensation; they are for cases in which there are no damages, or none that could ever be proved. *Id*. The rule in Texas is that nominal damages are not available when the harm is entirely economic and subject to proof, as opposed to non-economic harm to civil or property rights. *Id*. (citing *Gulf Coast Inv. Corp. v. Rothman*, 506 S.W.2d 856, 858 (Tex.1974) (rejecting claim for nominal damages when evidence showed plaintiff suffered no economic damage)).

Here, Chehab has not pleaded for nominal damages for non-economic harm, such as harm to civil or property rights. Therefore, the fact that nominal damages can generally be recovered in a breach-of-contract action does not create a fact issue as to whether Chehab produced evidence of actual damages. *See* Tex. R. Civ. P. 166a.

9

## B.     Evidence of Lost Profits

Chehab next asserts that he produced enough evidence to create a fact issue on lost profits damages. "Lost profits are damages for the loss of net income to a business measured by reasonable certainty." *Miga v. Jensen*, 96 S.W.3d 207, 213 (Tex. 2002). Recovery of lost profits does not require that the loss be susceptible to exact calculation. *Tex. Instruments, Inc.*, 877 S.W.2d at 279. The loss, however, must not be speculative. The general rule is that recovery of lost profits as damages is allowed "where it is shown that a loss of profits is the natural and probable consequence of the act or omission complained of, and their amount is shown with sufficient certainty." *Tex. Instruments, Inc.*, 877 S.W.2d at 279 (quoting *Sw. Battery Corp. v. Owen*, 115 S.W.2d 1097, 1098 (Tex. 1938)). "[A]nticipated profits cannot be recovered where they are dependent upon uncertain and changing conditions, such as market fluctuations, or the chances of business, or where there is no evidence from which they may be intelligently estimated." *Id.* (quoting *Owen*, 115 S.W.2d at 1098). Indeed, "[t]he law is wisely skeptical of claims of lost profits from untested ventures or in unpredictable circumstances, which in reality are little more than wishful thinking." *Phillips v. Carlton Energy Grp., LLC*, 475 S.W.3d 265, 280 (Tex. 2015). When the evidence supporting a claim for lost profits damages is largely speculative or a mere hope for success, lost profits have not been shown with reasonable certainty. *Tex. Instruments*, 877 S.W.2d at 279.

Whether a new business entity seeking entry into an existing market may recover lost profits depends on the experience of the persons involved in the enterprise, the nature of the business activity and the relevant market, and whether the profits the business might have made are "susceptible of being established by proof to that degree of certainty which the law demands." *Id.* at 280 (quoting *Owen*, 115 S.W.2d at 1099). To avoid summary judgment when presented with a no-

evidence motion, an injured party "must do more than show that [he] suffered some lost profits." *Total Clean, LLC v. Cox Smith Matthews Inc.*, 330 S.W.3d 657, 663 (Tex. App.—San Antonio 2010, pet. denied) (citing *Szczepanik v. First S. Trust Co.*, 883 S.W.2d 648, 649 (Tex. 1994)). He must show the amount of the loss by competent evidence with reasonable certainty. *Id*. "At a minimum, opinions or estimates of lost profits must be based on objective facts, figures, or data from which the amount of lost profits may be ascertained." *Szczepanik*, 883 S.W.2d at 649; *Holt Atherton Indus., Inc. v. Heine*, 835 S.W.2d 80, 84 (Tex. 1992). Lost profits are damages for the loss of net income to a business and, broadly speaking, reflect income from lost-business activity, less expenses that would have been attributable to that activity. *Miga*, 96 S.W.3d at 213.

In response to First Service's no-evidence motion for summary judgment the only evidence Chehab presented that was arguably related to lost profits were the affidavits of Saman and Esparza. Saman averred that his used car business in New Orleans surged following Hurricane Katrina. Saman averred that his business surged in volume from approximately 40 cars per month to 100 cars per month for several months following the disaster. Saman further averred that his retail profits surged from approximately $750 per car to $3,000 per car. Saman stated that he planned to supply 35 to 40 cars to Chehab but did not do so because Chehab did not "hold his end of the deal." Chehab also attached the affidavit of Luis Esparza who averred that his two used car dealerships experienced a 28 to 30 percent increase in sales in a four-month period following Hurricane Harvey.

Neither affidavit addressed an amount of profits that Chehab would have made if First Service had given Chehab cash on the day he requested it. Chehab did not produce evidence of the loss of net income that was the "natural and probable consequence" of First Service's failure to give Chehab cash on the day he made the

11

request. *See Tex. Instruments, Inc.*, 877 S.W.2d at 279. Chehab did not provide an opinion or estimate of the amount of lost profits, if any, or any evidence as to why First Service's offer of a wire transfer or cashier's check caused him to fail to "hold his end of the deal." Saman and Esparza's affidavits recounted their experiences with selling used cars following a major hurricane. The affidavits were not evidence of opinions or estimates based on objective facts, figures, or data from which the amount of lost profits may be ascertained. The distinguishing feature between Texas cases permitting and denying recovery for lost profits is reliance upon routinely kept business records produced in court to show an evaluation of the business's decreased profitability based upon objective facts, figures, and data. *Holland v. Hayden*, 901 S.W.2d 763, 766 (Tex. App.—Houston [14th Dist.] 1995, writ denied). Here, there is no summary-judgment evidence that Chehab suffered any reasonably certain business losses resulting from First Services three-day delay in honoring Chehab's request for a large amount of cash.

Under the applicable standard of review, the summary-judgment evidence filed by Chehab in response to First Service's no-evidence motion regarding each of Chehab's claims did not raise a genuine issue of fact as to whether Chehab suffered any lost profits damages resulting from First Service's alleged breach of contract, breach of fiduciary duty, or violation of the DTPA. *See Szczepanik*, 883 S.W.2d at 649–50; *Holt Atherton Indus., Inc.*, 835 S.W.2d at 83–86.

## IV. Chehab has not challenged any other grounds on which the motion for no-evidence summary judgment could have been granted.

In First Service's motion for summary judgment, in addition to asserting that Chehab produced no evidence of damages, First Service asserted that Chehab produced no evidence (1) that First Service violated the DTPA by not immediately providing Chehab cash on demand; (2) that First Service made any

misrepresentations; (3) that First Service failed to disclose any information material to Chehab's decision to enter into the contract; (4) that there was a fiduciary relationship between Chehab and First Service; and (5) that First Service retained any economic benefits from the retention of the cash for three days.

Chehab did not produce a scintilla of evidence of the above issues to the trial court, nor does he argue on appeal that he produced evidence of any misrepresentations by First Service or a fiduciary duty between him and First Service. Chehab has not challenged all independent bases or grounds that could, if meritorious, support the summary judgment dismissing his claims. We therefore must uphold the summary judgment on those issues. *See Durham v. Accardi*, 587 S.W.3d 179, 183 (Tex. App.—Houston [14th Dist.] 2019, no pet.) (if an appellant does not challenge every possible ground for summary judgment, we will uphold the summary judgment on any of the unchallenged grounds).

Moreover, damages is a required element of each of Chehab's claims. *See Cruz*, 364 S.W.3d at 824 (no claim under the DTPA can be maintained absent proof that defendant's act was a producing cause of plaintiff's damages); *Tony Gullo Motors*, 212 S.W.3d at 304 (for breach of contract, a plaintiff may recover economic damages and attorney's fees, but not mental anguish or exemplary damages); *Tex. Instruments*, 877 S.W.2d at 279 (lost profits are recoverable for a breach of fiduciary duty when it is shown that the loss is the natural and probable consequence of the complained of act); *West v. Triple B. Servs., LLP*, 264 S.W.3d 440, 446 (Tex. App.—Houston [14th Dist.] 2008, no pet.) (to recover on a breach of contract cause of action, plaintiff must have sustained damages as a result of the defendant's breach).

Because Chehab produced no evidence of damages and did not address the remaining grounds for summary judgment, we overrule Chehab's issues on appeal. Having determined that Chehab produced no evidence in response to First Service's

13

no-evidence motion for summary judgment we need not, and do not, address First Service's motion for traditional summary judgment. *See Ford Motor*, 135 S.W.3d at 600.

## CONCLUSION

Having overruled appellant's issues on appeal we affirm the trial court's judgment.


/s/    Jerry Zimmerer
       Justice


Panel consists of Justices Zimmerer, Spain, and Hassan.